# EXHIBIT 2

```
 1                  BEFORE THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA
 2

 3    BROIDY CAPITAL MANAGEMENT LLC, .
      et al.,                        .
 4                                   .
                  Plaintiffs,        .   Case Number 19-cv-150
 5                                   .
           vs.                       .
 6                                   .
      NICOLAS D. MUZIN, et al.,      .
 7                                   .
                  Defendants.        .
 8    - - - - - - - - - - - - - - - -
      BROIDY CAPITAL MANAGEMENT LLC, .
 9    et al.,                        .
                                     .
10                Plaintiffs,        .   Case Number 22-mc-30
                                     .
11         vs.                       .
                                     .
12    NICOLAS D. MUZIN, et al.,      .
                                     .
13                Defendants.        .
      - - - - - - - - - - - - - - - -
14    BROIDY CAPITAL MANAGEMENT LLC, .
      et al.,                        .
15                                   .
                  Plaintiffs,        .   Case Number 22-mc-31
16                                   .
           vs.                       .
17                                   .
      GREGORY HOWARD, et al.,        .   June 15, 2022
18                                   .   3:04 p.m.
                  Defendants.        .
19    - - - - - - - - - - - - - - - -

20

21                    TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE DABNEY L. FRIEDRICH
22                     UNITED STATES DISTRICT JUDGE

23

24

25
```

```
 1      APPEARANCES:

 2      For the Plaintiffs:          DANIEL BENSON, ESQ.
                                     ANDREW KURLAND, ESQ.
 3                                   Kasowitz Benson Torres LLP
                                     1633 Broadway
 4                                   New York, New York 10019

 5                                   HENRY BROWNSTEIN, ESQ.
                                     Kasowitz Benson Torres LLP
 6                                   1401 New York Avenue Northwest
                                     Suite 401
 7                                   Washington, D.C. 20005

 8      For Defendants Muzin and
        Stonington:                  STEPHEN OBERMEIER, ESQ.
 9                                   KRYSTAL SWENDSBOE, ESQ.
                                     Wiley Rein LLP
10                                   2050 M Street Northwest
                                     Washington, D.C. 20036
11
        For Defendant Allaham:       ERIC ROMAN, ESQ.
12                                   NICHOLAS COLLINS, ESQ.
                                     Arent Fox LLP
13                                   1301 Avenue of the Americas
                                     Floor 42
14                                   New York, New York 10019

15                                   RANDALL BRATER, ESQ.
                                     Arent Fox LLP
16                                   1717 K Street Northwest
                                     Washington, D.C. 20006
17
        For Defendant Howard:        JEFFREY UDELL, ESQ.
18                                   JENNIFER BERGER, ESQ.
                                     Walden Macht & Haran LLP
19                                   250 Vesey Street
                                     27th Floor
20                                   New York, New York 10281

21      Official Court Reporter:     SARA A. WICK, RPR, CRR
                                     United States District Court
22                                     for the District of Columbia
                                     333 Constitution Avenue Northwest
23                                   Room 4704-B
                                     Washington, D.C. 20001
24                                   202-354-3284

25      Proceedings recorded by stenotype shorthand.
        Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S
 2         (All participants present telephonically.)
 3              COURTROOM DEPUTY:  Your Honor, we are in Civil Action
 4    19-150, also MC-22-30, MC-22-31, Broidy Capital Management LLC,
 5    et al., versus Nicolas Muzin, et al.
 6       If I can have a representative of counsel for the plaintiff
 7    identify himself for the record, please.
 8              MR. BENSON:  Daniel Benson from Kasowitz Benson &
 9    Torres for the plaintiffs.
10              COURTROOM DEPUTY:  And for defendant?
11              MR. OBERMEIER:  Good afternoon, Your Honor.  Steve
12    Obermeier on behalf of the Stonington defendants.  With me is my
13    colleague Crystal Swendsboe.
14              MR. ROMAN:  Good afternoon, Your Honor.  This is Eric
15    Roman on behalf of Joseph Allaham.  And with me are my
16    colleagues, Randall Brater and Nicholas Collins.
17              MR. UDELL:  Good afternoon, Your Honor.  Jeffrey Udell
18    from Walden Macht & Haran for defendant Gregory Howard.  With me
19    is my colleague, Jennifer Berger.
20              THE COURT:  All right.  Is that everybody?
21              DEFENDANT MUZIN:  Nicolas Muzin.  I'm here as the
22    defendant.
23              THE COURT:  Okay.  All right.  So before me now are a
24    total of eight discovery motions filed in Broidy Capital
25    Management versus Muzin and the two miscellaneous cases.  I'm
```

1    not going to hear any argument on these motions today.  There's
2    been an extraordinary amount of briefing on them, I think over
3    500 pages in total.  So far as I can tell, none of these briefs
4    raise particularly novel or complex legal issues.  The parties
5    are instead asking the Court to resolve routine discovery issues
6    that are the kind that civil litigants ordinarily resolve in
7    good faith without court intervention.  And it's clear to the
8    Court that's not happened here.
9        According to an appendix in the defendant's lead motion to
10   compel, the parties in the main case disagree on somewhere
11   between 400 and 600 separate requests for information or
12   admissions.  That number does not even include the defendants'
13   disputes with the nonrespondents, which are also substantial.
14   So to give just one example, it looks to me like the defendants
15   disagree with Rosenzweig and Mowbray on another 180 discovery
16   requests.  And on top of all that, the record indicates that
17   neither party had produced a single document as of this April.
18       This, in the Court's view, reflects a near total breakdown
19   of the discovery process.
20       All right.  The briefs raise an extraordinary number of
21   disputes.  I'm not going to go through the motions line by line.
22   Instead of addressing each issue request by request, I'm going
23   to identify certain categories of information that is or is not
24   discoverable.  And moving forward, consistent with the federal
25   and local rules, I do expect the parties to respect the ruling I

1  will make today and engage in a good faith effort to resolve
2  their disputes independently.
3      First, the legal standards.  Federal Rule 26(b)(1) provides
4  that parties may obtain discovery regarding any nonprivileged
5  matter that is relevant to any party's claim or defense and
6  proportional to the needs of the case.  Relevance is to be
7  construed broadly to encompass any matter that bears on or that
8  reasonably could lead to other matter that could bear on any
9  issue that is or may be in the case.  *Oppenheimer Fund, Inc., v.*
10 *Sanders,* 437 U.S. 340 at 351.
11     Proportionality, in turn, depends on the importance of the
12 issues at stake in the action, the amount in controversy, the
13 parties' relative access to relevant information, the parties'
14 resources, the importance of the discovery in resolving the
15 case -- the issues, and whether the burden or expense of the
16 proposed discovery outweighs its likely benefit.  That's Federal
17 Rule of Civil Procedure 26(b)(1).
18     Federal Rule 26(b)(2)(C) further provides that courts may
19 limit the frequency or extent of discovery upon finding that the
20 discovery sought is unreasonably cumulative or duplicative or
21 can be obtained from some other source that is more convenient,
22 less burdensome, or less expensive; that the party seeking
23 discovery has had ample opportunity to obtain the information by
24 discovery in the action; or that the proposed discovery is
25 outside the scope permitted by Rule 26(b)(1).

1    Courts also may limit discovery by issuing a protective
2    order pursuant to Federal Rule 26(c) that protects parties or
3    other persons from annoyance, embarrassment, oppression, or
4    undue burden or expense.
5    Finally, courts may quash or modify any subpoena pursuant
6    to Federal Rule 45(d)(3)(A)(iv) that subjects the person to
7    undue burden.
8    Now turning to the parties' motions.  First, the
9    defendants' motion to compel, I will grant it in part and deny
10   it in part, and I will start with the grants.
11   First, I find that the defendants are entitled to some
12   discovery regarding Broidy's alleged illegal activities.  Broidy
13   has opened himself up to this category of discovery by alleging
14   in paragraph 26 of his complaint that the defendants
15   disseminated false and misleading stories based on the hacked
16   and stolen information about him.  As the defendant has argued,
17   citing my opinion in *Pietrangelo v. Refresh Club, Inc.*, 2021
18   WL 1209300 at 9, as a general matter, it takes only one word in
19   a complaint to open a can of discovery worms.
20   And to defend against this allegation, the defendants are
21   entitled to discovery that tends to show that the stories
22   referenced in the complaint about Broidy's recorded illegal
23   conduct were truthful.  This is relevant information within the
24   meaning of Federal Rule 26(b)(1).
25   Second, I also find that the defendants are entitled to

1    some discovery relating to Broidy's plea agreement in Case
2    Number 20-cr-210.  The defendants highlight a single sentence in
3    that agreement which provides that the government at sentencing
4    may present information regarding his efforts to obtain business
5    from a Middle Eastern country and influence U.S. policy toward a
6    second Middle Eastern country and its alleged support of
7    terrorist activity.  That sentence can be read to reference
8    unlawful conduct involving Qatar, and information about that
9    conduct is relevant for the reasons I've just explained.
10        To the extent that Broidy possesses any documents that are
11   both reasonably related to that sentence and not covered by the
12   attorney-client privilege, it will not be unduly burdensome for
13   him to provide them here.  Broidy has not raised a privilege
14   claim, but to the extent he did, the Eleventh Circuit made clear
15   in *Doe Number 1 v. United States*, 749 F.3d 999 at 1009 through
16   1010, no common law privilege prohibits the discovery of plea
17   negotiations.
18        For these reasons, the defense is entitled to discovery
19   relating to the sentence that the defendants highlighted in
20   Broidy's plea agreement.
21        Third, the defendants are also entitled to discovery
22   relating to Broidy's damages.  In his opposition, Broidy has
23   agreed to produce information that supports his view of his own
24   damages, but the defendants are also entitled to information
25   that might undermine his position on damages.  That includes

1       information that bears on whether the defendants' alleged
2       conduct actually harmed him financially, and it includes
3       information that could show a disruption in his business
4       activities or a lack of disruption in those activities.
5            I'm not going to rule, for the reasons I've already stated,
6       on the discrete discovery requests listed on pages 36 to 37 of
7       the defendants' motion to compel.  Those requests are relevant
8       within the meaning of Federal Rule 26, but they may or may not
9       be proportional to the needs of this case.  That is work that I
10      expect the parties to engage in in good faith.
11           Fourth, the defendants are also entitled to discovery
12      related to Howard's First Amendment defense.  Contrary to
13      language in Broidy's opposition, I did not expressly reject that
14      defense in my March 2020 opinion.  My opinion recognized that a
15      stranger's illegal conduct does not suffice to remove the First
16      Amendment shield from speech about a matter of public concern.
17      At the same time, the opinion reasoned that if Broidy could
18      establish Howard's involvement in a conspiracy to intercept his
19      information, Howard would be liable for the illegal interception
20      as if he committed the hacking himself.
21           Because Howard's involvement in any conspiracy is a
22      question of fact, I rejected his First Amendment defense at the
23      motion to dismiss stage.  I did not, however, foreclose the
24      possibility of a First Amendment defense following discovery.
25      If Howard can prove that he played no role in the alleged

1  conspiracy, the First Amendment could well provide a defense to
2  his receiving stolen property, to give just one example.  For
3  this reason, he is entitled to discovery that bears on a First
4  Amendment defense.
5      Finally, the defendants are entitled to some discovery of
6  documents that predate December 2017, the month in which the
7  first hack occurred.  Prehack discovery relating to Broidy's
8  alleged illegal activity, whether Broidy took reasonable
9  measures to protect its trade secrets, and Broidy's business and
10 business relationships are examples of relevant prehack
11 discovery.
12     So in raw terms, that's what I find the defendants are
13 entitled to in discovery.  Now I will turn to what is not
14 discoverable.
15     First, the defendants may not use the discovery process as
16 a fishing expedition for new unlawful conduct relating to Broidy
17 or his companies that has never been made public and,
18 accordingly, has no connection to the allegations in Broidy's
19 complaint.  See *Benavides* at 968 F.2d at 1249.
20     The defendants have failed to show that their extremely
21 broad requests relating to Broidy's business dealings and his
22 companies is relevant even under the liberal standard of Federal
23 Rule 26.  It does not go to Broidy's damages, to the defendant's
24 unclean hands defense, or to Howard's First Amendment defense.
25 It also has no discernible connection to the existence of a

1    trade secret, and it's cumulative with respect to Broidy's
2    credibility.
3        The defendants have argued that this discovery would offer
4    clues as to who may have actually hacked Broidy's e-mails, but
5    they have not explained how Broidy's alleged violations of U.S.
6    law would go to any hacker's motivation.  Moreover, allowing
7    extended discovery in this area would be disproportionate to the
8    needs of this case, considering both the burden on Broidy and
9    the likely negligible benefit to the defendant.
10       Although the defendants are entitled to discovery regarding
11   the sentence in Broidy's 2020 plea agreement that I've already
12   discussed, the defendants may not obtain discovery about other
13   conduct at issue in that criminal case, which appears to have
14   concerned events, persons, and entities in either East or
15   Southeast Asia.  Those events, persons, and entities do not
16   appear to be relevant to the allegations in Broidy's complaints
17   or to the calculation of damages.
18       The same is true for information regarding Boidy's
19   subsequent pardon by the president.  The defendants have not
20   established how any information regarding that pardon could bear
21   on the merits of this case.
22       I'm also concerned that the defendants' request for broad
23   discovery into Broidy's criminal case reflects an improper
24   purpose, and I find it to be disproportionate to the needs of
25   this case.

1          The defendants also must narrow their discovery requests
2     relating to Broidy's trade secrets.  In their motion, the
3     defendants note a request for all communications that discuss,
4     transmit, attach, disclose, publish, share, forward, or disclose
5     each alleged trade secret.  This language is overbroad.  The
6     defendants do not need every communication discussing a piece of
7     information to determine whether it qualifies as a trade secret
8     under federal and California law.
9          The defendants' motion also lists a request to explain with
10    precision and specificity how each such trade secret is
11    different from information that is available in the public
12    domain.  That interrogatory concerns the application of law to
13    fact, and under Federal Rule 33(a)(2), I'm going to exercise my
14    discretion to order that the interrogatory need not be answered
15    until designated discovery is complete.
16         Based on these rulings, I'm going to direct the defendants
17    to review their disputed discovery requests and strike those
18    that are not both relevant and proportional, because many of the
19    discovery requests in the 200-page appendix at Docket Number 115
20    through 116 are inconsistent with the rulings I just made.  And
21    the sheer volume of these requests alone makes the Court
22    question, again, whether the defendants are proceeding with
23    discovery in good faith.  See *Oppenheimer Fund,* 437 U.S. at 353.
24         So I'm going to give the defendants until June 21st to
25    provide the plaintiffs with a list of the requests that they are

1   no longer pursuing, and by June 28th, the defendants shall
2   provide similar lists to the subjects of the third-party
3   subpoenas.
4        Let me address several remaining issues that were raised in
5   the briefs.  First, the defendants have challenged Broidy's
6   objections to their discovery requests as insufficiently
7   specific.  I'm not persuaded in the context of this case.
8   Flipping through the voluminous appendices, Broidy at times
9   argues relevance, at other times he argues vagueness,
10  overbreadth, vexatiousness, and various other privileges.  It's
11  true that he could have been more specific, but I find the same
12  to be true for the defendants' responses to Broidy's
13  interrogatories.  For example, although the defendants object to
14  what they describe as Broidy's blanket relevance objection,
15  defendant Howard raised an identical objection in response to
16  Broidy's request for the production of documents.  See Howard's
17  responses and objections to the plaintiffs' first request for
18  production of documents objecting to 12 requests on the grounds
19  that they sought documents that are irrelevant to this action
20  without providing any further elaboration.
21       So for these reasons, I will not treat Broidy's objections
22  as defective.
23       The defendants also cite Section 2019.210 of the California
24  Civil Procedure Code to argue that Broidy had an obligation to
25  identify his trade secrets with reasonable particularity before

1  discovery began.  But district courts in California have reached
2  contrary conclusions on whether that section applies to actions
3  in federal court.  See *Society Apps., LLC, v. Zynga, Inc.*, 2012
4  WL 2203063 at 1, collecting cases.
5       The defendants do not grapple with that split in authority
6  or offer any argument on the underlying *Erie* analysis.  To the
7  contrary, they devote only a single sentence of their opening
8  brief to the statutory provision.  So I will treat the
9  defendants' reliance on this section of the California code as
10 forfeited.  See *Public Services Electric and Gas Company v.*
11 *FERC,* 485 F.3d at 1170.
12      Turning to the third-party subpoenas, my earlier rulings on
13 relevance and proportionality resolve a substantial share of the
14 Rule 26 issues raised in the third-party context, as most
15 third-party respondents raised similar arguments to Broidy or
16 incorporated his filings by reference.  And so it goes without
17 saying that my rulings with respect to Broidy's arguments apply
18 to the respondents.
19      I also expect the defendants to narrow the scope of their
20 disagreements with those respondents in the course of complying
21 with my order to review the discovery requests to ensure that
22 they are consistent with my rulings.  At this time I'm not going
23 to address the respondents' Rule 26 arguments in detail.
24      With respect to the issue of whether certain respondents
25 waived their objections to the defendants' subpoenas, the Court

1     may consider whether, first, the subpoena is overbroad on its
2     face and exceeds the bounds of fair discovery; second, a
3     subpoenaed witness is a nonparty acting in good faith; and
4     third, counsel for the witness was in contact with counsel for
5     the party prior to filing its form objection.  *Yousuf v.*
6     *Samantar,* 451 F.3d at 252.
7          Here, the defendants' subpoenas are overbroad in the ways
8     I've already described.  Moreover, several of the respondents,
9     including Steven Rabinowitz and Richard Miniter, have reasonably
10    represented that they acted in good faith.  And to the extent
11    that Circinus, Rosenzweig, and Mowbray's responses were untimely
12    in the first instance, it appears that those respondents'
13    attorneys were communicating with defense counsel at appropriate
14    times.
15         Finally, the defendants have certainly dragged their own
16    feet during the discovery process.  As I've noted already, the
17    defendants had not produced any documents for Broidy as of
18    April 21st.  And where a party has been less than diligent with
19    its own discovery deadlines, there is good cause to deny that
20    party the benefit of demanding diligence from others.  *Yousuf*,
21    451 F.3d at 252.
22         Similar reasoning applies with respect to the defendants'
23    requests for fees under Federal Rule 37(a)(3)(5).  Under that
24    rule, a party that prevails on a motion to compel can ordinarily
25    require the nonmovant to pay reasonable expenses incurred in

1  making the motion, including attorney's fees.  Fee shifting is
2  not permitted, however, when the movant filed the motion before
3  attempting in good faith to obtain a disclosure of discovery
4  without court action or when the opposing party's nondisclosure
5  response or objection was substantially justified.
6      Here, it's possible to argue that the defendants' prevailed
7  in part in their lead motion to compel, but I'm not convinced
8  that the defendants engaged Broidy in a good faith effort before
9  filing that motion.  Broidy also was substantially justified in
10 opposing several of the defendants' discovery requests for the
11 reasons I've explained.
12     So although I will defer final consideration of all
13 attorney's fees until the conclusion of this litigation, I'm
14 leaning against granting the defendants' fees.
15     Turning to the last third-party issue, I'm not going to
16 resolve Mr. Wieder's motion to quash in this hearing.  That
17 motion is not ripe as a result of the minute order issued on
18 May 4th which stayed the briefing schedule for all pending
19 motions.  I will note, however, that compelling the production
20 of a reporter's materials generally requires showing both,
21 first, that the information at issue goes to the heart of a case
22 and, secondly, that the requesting party has exhausted every
23 reasonable alternative source of information.  *Lee v.*
24 *Department of Justice*, 413 F.3d at 57.  See also *Hutira v.*
25 *Islamic Republic of Iran*, 211 F.Supp.2d at 120.

1    I'm not sure how Broidy could meet the exhaustion
2    requirements at this time, considering that he has yet to
3    receive the defendants' productions.  Regardless, to the extent
4    that Broidy opposes this motion to quash, he should file on or
5    before June 23rd the -- he should follow the process outlined in
6    the Court's standing order.
7        Finally, to make sure that discovery stays on track, I'm
8    going to order the parties to file on or before July 15th of
9    this year a joint status report updating me on the status of
10   discovery.  This report should describe the parties' progress in
11   resolving their disagreements and producing discoverable
12   information.
13       To be clear, this is not a substitute for the dispute
14   resolution procedures set forth in this Court's standard order.
15   The purpose is to ensure that the parties are making progress.
16   I may also order additional discovery reports after that one.  I
17   really don't want any more surprises about the state of
18   discovery.
19       So for the record, I've granted in part and denied in part
20   the defendants' motions to compel, see Dockets 115, 124, 126,
21   144 in Case Number 19-150, Docket 3 in Case Number 22-mc-30, and
22   Docket 1-3 in Case Number 22-mc-131, as well as Broidy's motion
23   to quash, see Docket 118 in Case Number 19-150.
24       I've also ordered the defendants to submit revised
25   discovery requests to the plaintiffs and to the third-party

1    respondents, and I've ordered a joint status report to be filed.
2        All right.  So that constitutes my ruling.  Thank you,
3    Counsel.
4            MR. UDELL:  Your Honor, this is Jeffrey Udell for
5    Mr. Howard.  Other counsel may be in the same boat.  You broke
6    up for just one second when you were giving the date in July for
7    the status report.  I didn't get that date.
8            THE COURT:  July 15.
9            MR. UDELL:  Thank you so much.
10           THE COURT:  All right.  Thank you, all.
11       (Proceedings adjourned at 3:26 p.m.)

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER
 2
 3         I, Sara A. Wick, certify that the foregoing is a
 4   correct transcript from the record of proceedings in the
 5   above-entitled matter.
 6
 7         Please Note:  This hearing occurred during the
 8   COVID-19 pandemic and is, therefore, subject to the
 9   technological limitations of court reporting remotely.
10
11
12   /s/ Sara A. Wick                    June 17, 2022
13   SIGNATURE OF COURT REPORTER         DATE
14
15
16
17
18
19
20
21
22
23
24
25
```